Brown, C.J.,
dissenting.
*207 {¶ 18} In my view, the court of appeals abused its discretion in sanctioning Bardwell under Civ.R. 11. Accordingly, I respectfully dissent.
{¶ 19} Civ.R. 11 provides: “The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney’s or party’s knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court’s own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule.”
{¶ 20} Thus, under Civ.R. 11, a court may impose sanctions only when the attorney or pro se litigant acts willfully and in bad faith and submits a pleading or other legal document believing that it lacks “good ground” to support it.
{¶ 21} I acknowledge that Bardwell did not provide a transcript of the show-cause hearing before the court of appeals. Nor did he prepare for this court a statement in lieu of a transcript. See App.R. 9(C). Nevertheless, Bardwell did attach to his answer to the court of appeals’ show-cause order evidence in the form of an affidavit. That affidavit refutes the conclusion that Bardwell filed in bad faith a complaint that lacked “good ground to support it” in violation of Civ.R. 11. The affidavit is present in the record before us and was also in the record when the court of appeals considered the imposition of sanctions.
{¶ 22} In his affidavit, Bardwell affirmatively states his motive for filing the mandamus case in the court of appeals: “to ensure that millions of taxpayer dollars were not wasted” relative to the Medical Mart project, an economic-development project, and “because the County had refused to release various records, including drafts of development agreements and a voice mail message referred to in an e-mail to their outside counsel.” Bardwell further stated in his affidavit that he had “no interest in harassing the County, injuring the County or increasing the cost of litigation, and did not file the Complaint in this case to any of those ends.” In my view, nothing in the record before us refutes that these sworn statements accurately reflected Bardwell’s state of mind at the time he signed the mandamus complaint. As discussed below, the state of mind reflected by these statements is inconsistent with a finding of bad faith sufficient to support an order of Civ.R. 11 sanctions.
{¶ 23} Accordingly, while it may be true, as observed by the court of appeals, that Bardwell did not introduce any exhibits at the show-cause hearing, Bardwell did provide an exhibit before the show-cause hearing that constituted evidentiary *208 evidence supporting his assertion that his state of mind at the time he filed the mandamus action was not that of bad faith. And while it is also true, as observed by the majority, that Bardwell failed to request a court reporter to make a record at the show-cause hearing, neither did the county request that the show-cause hearing be recorded.[1]
{¶ 24} I cannot agree on these facts that “because Bardwell has failed to assure this court that it has the complete record of the evidence upon which the court of appeals decided this matter, we must presume the validity of the court of appeals’ award of sanctions.” See majority opinion at ¶ 14. In the seminal case, this court acknowledged the duty of an appellant to provide a transcript “ ‘of such parts of the proceedings not already on file as he deems necessary for inclusion in the record,’” — not the “complete record” of all the evidence. (Emphasis added.) Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384, quoting former App.R. 9(B), 54 Ohio App.2d xv. And as noted in a footnote, Knapp further observed, “It is also true that the appellee must bear some burden for providing an adequate transcript under App.R. 9(B). The relevant portion of that rule states that ‘[i]f the appellee deems a transcript of other parts of the proceedings to be necessary he shall * * * file and serve on the appellant a designation of additional parts to be included.’ ” Id., quoting former App.R. 9(B), 54 Ohio App.2d xv.
{¶ 25} In my view, Bardwell provided prior to the show-cause hearing evidence that established an absence of bad faith. At the hearing, the county presumably argued other facts in rebuttal. Because we lack a transcript informing us of those other arguments or testimony — evidence that the county needs in order to rebut the evidence contained in Bardwell’s affidavit — the detrimental consequences of the lack of a transcript in this case should fall on the county. In short, I disagree that a “presumption of regularity” should be applied in this case, particularly because presuming “regularity” here is equivalent to finding that the court of appeals heard evidence at the show-cause hearing rebutting the evidence contained in the affidavit previously submitted by Bardwell.
{¶ 26} On March 26, 2009, Bardwell personally requested three types of public records from the county prosecutor: (1) the prosecutor’s records-retention schedule, (2) communications between the Cuyahoga County Board of Commissioners (“county”) and the Cleveland Plain Dealer regarding the Medical Mart economic-development project, and (3) “drafts of contracts or development agreements *209 related to Medical Mart projects.” Later that day, the prosecutor provided Bardwell its record-retention schedule.
{¶ 27} On March 27, 2009, the prosecutor’s office provided Bardwell with communications between the county and the Plain Dealer regarding the project. However, the prosecutor also informed Bardwell in writing that drafts of the agreement were not subject to disclosure, because they were protected by attorney-client privilege, adding, “[WJhen an agreement is finalized and ready to be submitted to the Board of County Commissioners for approval, the final agreement and drafts will be made available.”[2] This communication constituted a denial of Bardwell’s public-records request until an unspecified time in the future, i.e., if and when the negotiations were finalized. The county effectively informed Bardwell of its legal position that drafts of the proposed contractual agreements were exempt from the Public Records Act, R.C. 149.43, during the period in which those agreements were being negotiated.
{¶ 28} It is well established that documents protected by attorney-client privilege are exempt from the Public Records Act. State ex rel. Leslie v. Ohio Hous. Fin. Agency, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, at ¶ 27. And during contract negotiations, the attorney-client privilege clearly applies to communications between negotiating entities and their own legal counsel. But I am unaware of any precedent that recognizes an attorney-client privilege as to draft contractual agreements once they are freely exchanged between the negotiating entities.
{¶ 29} Attached to Bardwell’s answer to the court of appeals’ show-cause order was an e-mail dated March 19, 2009, from David Marburger, counsel for the Plain Dealer, to Fred Nance, counsel for the county, regarding the economic-development project. It stated:
{¶ 30} “Fred: I just left a voice mail for you — pis [sic] give the county the green lite [sic] to allow the Plain Dealer to inspect & receive a copy of the drafts of the development contracts that the county possesses that also have been shared with representatives of the organization that would enter into the contract toith the county.” (Emphasis added.)
*210 {¶ 31} Bardwell’s affidavit included as an exhibit the Marburger e-mail. In my view, Bardwell could reasonably infer from this e-mail that a licensed attorney representing the Plain Dealer had rejected the county’s legal assertion that the draft contractual agreements were protected by attorney-client privilege once they were released to third parties. Moreover, in his answer to the court of appeals’ show-cause order, Bardwell expressly stated that “[a]s negotiations have been ongoing for more than a year, it is most likely that the drafts have been exchanged back and forth between the two parties, waiving any privilege that the County might have claimed.” His affidavit and written argument provide persuasive evidence that Bardwell believed that drafts of the economic agreement existed at the time of his public-records request and were nonprivileged public records required to be disclosed, despite the county’s assertions to the contrary.
{¶ 32} Contract negotiations are frequently fragile, and the public disclosure of draft proposals exchanged during negotiations may hamper the ability of a public entity to obtain for the public the most favorable terms. Perhaps for this reason, the General Assembly has already provided that a county using a competitive, sealed-proposal process pursuant to R.C. 307.86 may defer until after the award of the contract Public Records Act requests for public inspection and copying of “proposals and any documents or other records related to a subsequent negotiation for a final contract.” R.C. 307.862(C). To the best of my knowledge, however, it is unresolved whether documents related to the negotiation of other contracts are included within the short-term exemption to the Public Records Act provided by R.C. 307.862 or are otherwise exempt from disclosure prior to submission of final agreements. That legal issue can be resolved only through litigation, such as that initiated by Bardwell when he filed the mandamus action in the court of appeals.
{¶ 33} Bardwell filed his mandamus action after having received information provided to him by the prosecutor’s office earlier that day, including Marburger’s e-mail and a letter clearly stating the county’s refusal to disclose the draft agreements at that time. Bardwell could reasonably conclude from the Marburger e-mail that the Plain Dealer was aware of or believed that there were nonprivileged drafts of the agreement. Pursuant to the e-mail and Bardwell’s affidavit, it is similarly reasonable to conclude that Bardwell believed that the county had drafts of the agreement that were not subject to attorney-client privilege and were required to be disclosed to him, but yet were being withheld. Thus, I would conclude that the court of appeals abused its discretion in finding that Bardwell lacked a good-faith belief that his complaint had a reasonable basis in law and fact.
{¶ 34} Moreover, in my view, when Bardwell filed suit in the court of appeals seeking a writ of mandamus to compel the county to provide copies of drafts of *211 the Medical Mart agreement exchanged during the negotiations, good grounds to support the complaint existed as a matter of law. Accordingly, I believe the court of appeals wrongly concluded that Bardwell’s complaint was “groundless in fact and legal argument.” State ex rel. Bardwell v. Cuyahoga County Bd. of Commrs., Cuyahoga App. No. 93058, 2009-Ohio-5573, 2009 WL 3387654, ¶ 14.
American Civil Liberties Union of Ohio Foundation, Inc., Brian J. Laliberte, and Carrie L. Davis, for appellant.
William D. Mason, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, for appellee.
{¶ 35} In light of the fact that Bardwell’s mandamus complaint framed a legitimate legal issue, i.e., whether draft contractual agreements shared between parties to potential public contracts are exempt from the public-records act, I do not believe that the other reasons enumerated by the court of appeals and cited by the majority support a finding of bad faith on the part of Bardwell at the time he signed the mandamus complaint. Those purported justifications either (1) recount pleading deficiencies in the nature of those frequently made by lay litigants, (2) refer to facts that occurred after the filing of the complaint, (3) fault Bardwell for moving quickly to file suit after the county expressly denied, in writing, his request for what he believed to be public records subject to disclosure, (4) suggest that bad faith is demonstrated when a complaint includes some claims that lack merit, e.g., the county’s asserted failure to provide a copy of the retention schedule, or (5) assume as an underlying premise that the county correctly withheld the requested draft agreements based on their status as privileged and exempt from the Public Records Act — even though the soundness of that premise was the very legal issue Bardwell’s complaint raised.
{¶ 36} I would hold that the court of appeals abused its discretion by imposing monetary sanctions on Bardwell pursuant to Civ.R. 11. I therefore respectfully dissent.
Pfeifer, J., concurs in the foregoing opinion.

. In its opinion, the court of appeals observed: “The parties were provided with an opportunity to allow for the presence of an official court reporter in order to preserve the record. No party arranged for the presence of an official court reporter at the show cause hearing as held on September 22, 2009.” State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs., Cuyahoga App. No. 93058, 2009-Ohio-5573, 2009 WL 3387654, ¶ 7, fn. 1.

. On March 27, 2009, prior to the filing of the complaint in mandamus, the county responded to Bardwell’s request for “[d]rafts of contracts or development agreements related to Medical Mart projects” as follows: “Regarding your second request, drafts of the Development Agreement are not records at this time, since terms of Development Agreement are still being negotiated, so there presently is no agreement that has been submitted to the Board of County Commissioners for their approval. Moreover, the rough drafts of the agreement that is being negotiated are exempt from disclosure because they include confidential communications between the public client and its attorneys including but not limited to the attorneys’ thoughts and opinions in rendering legal advice. * * * When an agreement is finalized and ready to be submitted to the Board of County Commissioners for approval, the final agreement and drafts will be made available.”