[Cite as *State v. Kunzer*, 2019-Ohio-2959.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,              CASE NO.  3-18-16

    v.

MATTHEW KUNZER,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Crawford County Common Pleas Court
Trial Court No. 18-CR-0044

**Judgment Affirmed**

Date of Decision:    July 22, 2019

APPEARANCES:

    *Howard A. Elliott*  for Appellant

    *Micah R. Ault*  for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Matthew Kunzer ("Kunzer"), appeals the August 17, 2018 judgment entry of sentence of the Crawford County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On February 6, 2018, Kunzer was indicted by the Crawford County Grand Jury on nineteen counts: Counts One, Two, Three, Eight, Ten, Eleven, Thirteen, Fifteen, Seventeen, and Nineteen of intimidation in violation of R.C. 2921.03, third-degree felonies; Counts Four, Five, and Six of aggravated menacing in violation of R.C. 2903.21(A), first-degree misdemeanors; Count Seven of resisting arrest in violation of R.C. 2921.33(A), a second-degree misdemeanor; and Counts Nine, Twelve, Fourteen, Sixteen, and Eighteen of retaliation in violation of R.C. 2921.05(A), third-degree felonies. (Doc. No. 7). Kunzer appeared for arraignment on February 20, 2018 and entered pleas of not guilty. (Doc. No. 6).

{¶3} After a jury trial on July 11, 2019, Kunzer was convicted of the nineteen counts in the indictment. (July 11, 2018 Tr. at 1-5, 291-294); (Doc. Nos. 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31).

{¶4} On August 17, 2018, the trial court sentenced Kunzer to 36 months in prison on Counts One, Two, Three, Eight, Ten, Eleven, Thirteen, Fifteen, Seventeen, and Nineteen, respectively. (Doc. Nos. 34, 38). The prison terms imposed by the trial court in Counts One and Two were ordered to be served

consecutively and the prison terms in Counts Three, Seven, Eight, Ten, Eleven, Thirteen, Fifteen, Seventeen, and Nineteen were ordered to be served concurrently to the consecutive terms imposed in Counts One and Two, for an aggregate sentence of 72 months in prison.  (*Id*.); (*Id*.).  For the purposes of sentencing, the trial court merged Counts Four, Five, Six, Nine, Twelve, Fourteen, Sixteen, and Eighteen.[1] (August 17, 2018 Tr. at 20); (Doc. No. 34).  Kunzer filed a notice of appeal on September 17, 2018 and raises five assignments of error.  (Doc. No. 41).  For ease of discussion, we will discuss Kunzer's second assignment of error, followed by his first assignment of error, and thereafter, we will conclude with his fifth, third, and fourth assignments of error together.

<strong>Assignment of Error No. II</strong>

**The trial court erroneously admitted testimony in contravention of the defendant-appellant's right to attorney-client privilege where the defendant-appellant asserted such right.**

{¶5} In his second assignment of error, Kunzer argues that the trial court abused its discretion by admitting evidence in contravention of the Ohio Rules of Evidence that were protected by attorney-client privilege.  In particular, he contends that he had a reasonable expectation that his communications with his trial counsel's law clerk and secretary were privileged and could not be used against him at trial. Kunzer argues that the trial court abused its discretion by admitting his statements

---

[1] The trial court filed a *nunc pro tunc* entry on September 4, 2018 to correct a clerical error.  (Doc. No. 38).

made to a law clerk during a jail-house interview and the questions posed to his prior trial counsel's secretary about the consequences of failing to return from a medical furlough.

*Standard of Review*

{¶6} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). *See also State v. Doe*, 101 Ohio St.3d 170, 2004-Ohio-705, ¶ 14 (applying this standard to the admissibility of attorney-client privilege claims). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶7} Kunzer argues that his statement to trial counsel's law clerk that he was going to "bury these mother fuckers six feet under" and the question he posed to his prior trial counsel's secretary were protected by attorney-client privilege, and therefore, inadmissible. (July 11, 2018 Tr. at 164, 168, 170, 176, 178, 181, 232).

{¶8} "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 16, quoting *Swidler &*

*Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081 (1998). Its ancient roots can be traced to the reign of Queen Elizabeth I. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 660 (1994), *superseded by state statute on other grounds*, *Cobb v. Shipman*, 11th Dist. Trumball No. 2011-T-0049, 2012-Ohio-1676, ¶ 34, citing 8 Wigmore, *Evidence*, Section 2290 (McNaughton Rev.1961) and *Spitzer v. Stillings*, 109 Ohio St. 297, 302 (1924). The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *McFarland v. W. Congregation of Jehovah's Witnesses, Lorain, Ohio, Inc.*, 9th Dist. Lorain No. 15CA010740, 2016-Ohio-5462, ¶ 67, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677 (1981).

**{¶9}** "In Ohio, the attorney client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *State v. Hendron*, 9th Dist. Summit Nos. 28067 and 28119, 2017-Ohio-352, ¶ 22 citing *State ex rel. Leslie v. Ohio House Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 18. *See State v. McDermott,* 72 Ohio St.3d 570, 574 (1995). *See also* Evid.R. 501 (providing that: [t]he privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience.) R.C. 2317.02 reads in its pertinent part:

**{¶10}** The following persons shall not testify in certain respects:

(A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client. However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

*Hendon* at ¶ 22, quoting R.C. 2317.02(A)(1).

**{¶11}** "[T]he statutory privilege governs communications directly between an attorney and a client." *McFarland* at ¶ 66, quoting *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, ¶ 7. The statutory privilege only applies to the in-court testimony of the attorney and does not include agents, employees, or representatives of the attorney. *McDermott* at 573-574; *See also* R.C. 2317.02(A). *But see McFarland* at ¶ 66, citing *State ex rel. Dawson v. Bloom-Carroll Local Sch. Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, ¶ 27. *But see* R.C. 2317.021 (noting the extension of the privilege to attorney's "agents, employees, and other representatives" has been recognized in cases of dissolved corporations within the definition of the "client" in civil cases).

R.C. 2317.02(A) provides a testimonial privilege — i.e., it prevents an attorney from testifying concerning communications made to the attorney by a client or the attorney's advice to a client. A testimonial privilege applies not only to prohibit testimony at trial, but also to

protect the sought-after communications during the discovery process.

*Hendon* at ¶ 22, quoting *Squire, Sanders & Dempsey, L.L.P.* at ¶ 18, quoting *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, ¶ 7, fn. 1. Accordingly, "[a]n attorney under R.C. 2317.02(A) cannot be compelled to testify concerning a communication made to him by his client absent a waiver of the attorney-client privilege." *Hendon* at ¶ 22, quoting *McDermott* at 693. R.C. 2317.02(A) "provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *Id*. at ¶ 23, citing *Greger* at paragraph one of the syllabus.

{¶12} Although the statutory privilege applies only to the in-court testimony of the attorney, "the common law attorney-client privilege reaches beyond the proscription against testimonial speech and protects against any dissemination of the information obtained from the confidential relationship. *Hendon* at ¶ 23, citing *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port. Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, ¶ 24, quoting *Leslie* at ¶ 18. *See also, McFarland* at ¶ 66 citing *Am. Motors Corp*., *v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991). *See also State v. Post*, 32 Ohio St.3d 380, 385 (1995), *overruled in part on other grounds*, *McDermott* at 574 (concluding that a defendant's statements to a polygraph expert retained by and assisting defense counsel were protected by common law attorney-client privilege). Common law attorney-client privilege pertains to circumstances:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Hendon* at ¶ 22-23, quoting *Nageotte v. Boston Mills Brandywine Ski Resort*, 9th Dist. Summit No. 26563, 2012-Ohio-6102, ¶ 8. *See also McFarland* at ¶ 67, quoting *Leslie* at ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir.1998). The common law attorney-client privilege protects against the disclosure of oral, written, and recorded information, unless the privilege is waived. *Greger* at ¶ 25, quoting *Leslie* at ¶ 26, quoting *Am. Motors Corp*. at 348. At common law, a client may waive the attorney-client privilege either expressly or by conduct implying a waiver. *Id*.

{¶13} Nevertheless, there are situations where a lawyer may disclose privileged information without the client's waiver. *See* Prof.Cond.R. 1.6(b) (waiver of the statutory attorney-client privilege). *See also Moskovitz* at 661 (concluding "the privilege does not attach in a situation where the advice is sought by the client and conveyed by the attorney relates to some future or fraudulent transaction" applying the crime-fraud exception to common law attorney-client privilege). *Squire, Sanders, & Dempsey, L.L.P.* at ¶ 3 (recognizing common-law exceptions to attorney-client privilege which include the crime-fraud exception "to prevent the concealment of * * * client wrongdoing").

{¶14} Statutory waiver involves the client's relinquishment of the protections afforded by R.C. 2317.02(A) once they have attached; however, there are exceptions to attorney-client privilege when the disclosure falls into the category of situations in which the privilege does not attach to the communications in the first instance and is therefore excluded from the operation of the statute as those outlined in Prof.Cond.R. 1.6(b), and similarly, common-law-waiver based on recognized exceptions to the common-law attorney-client privilege. *See Squire, Sanders, & Dempsey, L.L.P.* at ¶ 3. *See also* Restatement of the Law 3d, Governing Lawyers, Chapter 5, Topic 2, Title C, Introductory Note (distinguishing between waivers of the privilege and exceptions to it) and § 82 (Client Crime or Fraud); Black's Law Dictionary (11th Ed.2019) (defining "exception," "statutory exception," "exemption," and "waiver") *available at* Westlaw.

{¶15} The applicability of a privilege * * * is a question of law that this Court reviews de novo. *State v. Miller*, 2018-Ohio-1172, ¶ 9 citing *McFarland* at ¶ 65. "A de novo review requires an independent review of the trial court's decision without any deference to [its] determination." *Id.* citing *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

{¶16} In order to address the applicability of the statutory or common law attorney-client privilege, we must review the record. We note that since Kunzer made his statement at issue to a law clerk and a secretary, not his lawyer, the

statutory privilege is not applicable here. *See McDermott* at 573-574. *See also* R.C.

2317.02(A). However, we now must determine whether the common law attorney-

client privilege applied in this instance, and whether the statement made and

question posed are, therefore, admissible.

{**¶17**} Kunzer's prior trial counsel's law clerk testified to the following

statements:

Q    I'm going to ask you to, if you could, do you recall specifically
what Mr. Kunzer said?

A    Specifically what was said, something to the effect of, I'm going
to bury these motherfuckers six feet under or put these
motherfuckers six feet under.

Q    And did he refer to certain people when he said that?

A    Yeah, he referred to the judge, being Judge Leuthold.

Q    Okay.

A    Ryan, which I took to be Ryan Hoovler.

Q    Okay.

A    And then in general the cops, the police officers that were
involved.

Q    Police officers that had arrested him?

A    Yes, sir.

(July 11, 2018 Tr. at 169-170).

{**¶18**} And, Kunzer's prior trial counsel's secretary testified as follows:

Q    At some point was there a conversation that you had with Mr.
Kunzer about his mother transporting him to a medical
appointment?

A    Yes.

Q    Okay. And what was your discussion with Mr. Kunzer?

A    Just I --- I honestly don't remember it that well. I know it was
just talked about whether it was a felony if he didn't return.

Q    Okay. And were you telling him it was a felony if he didn't
return?

A    After he asked I did say it was, yes, a felony if he did not return.

Q    And what is it that he asked that you responded it's a felony if you don't return?

A    I don't remember exactly if he asked is it a felony or is it a crime, something along those lines.

Q    Okay. But he was asking about not returning from going to the appointment?

A    From the furlough, he's asking about not returning from the furlough.

Q    Did he say anything further about that?

A    No, I don't believe. That's why I said it's been a long time, I don't remember. I don't believe there was anything else. I just told him he needed to go back and that's pretty much it, from what I remember.

(*Id.* at 164-165). Assuming without deciding that the statement made by Kunzer to the law clerk and the question Kunzer posed to the secretary and her responses are privileged, we conclude that the common law attorney-client privilege is applicable in this instance.

{¶19} Notably, Kunzer did not waive attorney-client privilege, and he objected to the admission of the statement and question. (*Id.* at 161-163, 167-169). However, we conclude that his statement to the law clerk and the question posed by Kunzer to the secretary and her responses are admissible under the crime-fraud exception. Specifically, if a communication is undertaken for the purpose of committing or continuing a crime or fraud, it is excepted from the attorney-client privilege. *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 383-384, (1998), citing *United States v. Collis*, 128 F.3d 313, 321 (6th Cir.1997); *State v. Bissantz*, 3 Ohio App.3d 108, 110 (12th Dist.1982), *rev'd on other grounds*, *State v. Bissant*, 30 Ohio

St.3d 120 (1987), quoting *State v. Mullins*, 26 Ohio App.2d 13, 18 (4th Dist.1971) ("'A privileged communication may be a shield of defense as to crimes already committed, but it cannot be used as a sword or weapon of offense to enable persons to carry out contemplated crimes against society.'"). The invocation of the crime-fraud exception requires a demonstration that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud. *Nix* at 384, citing *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir.1997), *abrogated on other grounds*, *Loughrin v. United States*, 573 U.S. 351, 134 S.Ct. 2384 (2014). "The mere fact that communications may be related to a crime is insufficient to overcome the attorney-client privilege." *Nix* at 384, citing *Jacobs* at 88, quoting *United States v. White*, 887 F.2d 267, 271 (D.C. Cir.1989).

{¶20} Here, the record reveals that Kunzer articulated a plan to overpower his mother, commandeer her vehicle during his medical furlough, and "bury these motherfuckers six feet under" (referencing a Crawford County Municipal Court Judge, a Crawford County Assistant Prosecutor, and three law enforcement officers with the Bucyrus Police Department) during his jail-house interview with the law clerk regarding his municipal court charges. (July 11, 2018 Tr. at 125, 164, 168-171, 176, 178, 181, 183, 232). Additionally, Kunzer also posed questions to the law clerk's co-worker (his prior trial counsel's secretary) near the time of that interview

regarding the potential consequences he would face should he did not return to the jail from his medical furlough. (*Id.* at 125, 164). The question reveals further evidence of Kunzer's plan to commit a crime.

**{¶21}** Judge Leuthold testified and confirmed that, he authorized a medical furlough for Kunzer permitting Kunzer's mother to transport him to and from the jail to Veteran's Affairs Hospital in Columbus for treatment. (*Id.* at 203-204). Kunzer, at the time he made the statement, had expressed an unlawful threat of harm towards others, he had inquired about the consequences of failing to return from medical furlough, and he had the opportunity to execute his plan (because his furlough had not yet been revoked). (*See id.* at 205-206). Thus, the record reflects that the State introduced sufficient, credible evidence to overcome the common law attorney-client privilege based on the crime-fraud exception under the facts presented. Accordingly, Kunzer's waiver of attorney-client privilege was not necessary, and the trial court did not abuse its discretion in admitting the statement of the law clerk and the questions posed to the secretary (by Kunzer) as well as her responses thereto.

**{¶22}** Accordingly, Kunzer's second assignment of error is overruled.

### Assignment of Error No. I

**In that the criminal proceedings against the defendant-appellant had not been completed by way of conviction or otherwise, the defendant-appellant could not either be charged or convicted of**

**retaliation under R.C. 2921.05(A) for his alleged conduct and to permit same to go to trial was in error.**

**{¶23}** In his first assignment of error, Kunzer argues that he could not be charged with intimidation and retaliation in the same indictment because a predicate conviction for the intimidation had to occur prior to a charge and trial for retaliation. Specifically, Kunzer argues that the "record is devoid of any evidence that the underlying criminal charges were resolved before the indictment for retaliation was lodged." (Appellant's Brief at 9).

*Standard of Review*

**{¶24}** We construe Kunzer's argument as an allied offense argument and will address it accordingly. R.C. 2941.25, Ohio's multiple-count statute, states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶25}** Whether offenses are allied offenses of similar import is a question of law that this court reviews de novo. *State v. Stall*, 3d Dist. Crawford No. 3-10-12, 2011-Ohio-5733, ¶ 15, citing *State v. Brown*, 3d Dist. Allen No. 1-10-31, 2011-

Ohio-1461, ¶ 36, citing *State v. Loomis*, 11th Dist. Ashtabula No. 2002-A-0102, 2005-Ohio-1103, ¶ 8. When applying de novo analysis, we must independently determine whether the facts satisfy the applicable legal standard without deference to the conclusions of the trial court. *State v. Johnson*, 3d Dist. Allen No. 1-13-45, 2014-Ohio-4750, ¶ 12, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997), *superseded by state regulation on other grounds*, *State v. Schmehl*, 3d Dist. Auglaize No. 2-05-33, 2006-Ohio-1143, ¶ 22.

*Analysis*

> Separate convictions are permitted under R.C. 2941.25 for allied offenses if we answer affirmatively to just one of the following three questions: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separate? And (3) Were they committed with a separate animus or motivation?

*State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 76, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph three of the syllabus.

**{¶26}** The Supreme Court of Ohio held that "for purposes of R.C. 2941.25(A), a conviction is a determination of guilt and the ensuing sentence." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 13, *superseded by state statute on other grounds*, *United States v. Mackey*, S.D.Ohio No. 3:04cr00096, 2014 WL 6606434, *2 (Nov. 20, 2014), fn. 4. Indeed, recognizing "R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a

protection against multiple sentences rather than multiple convictions." *Id*. at ¶ 18. Because "a defendant may be found guilty of allied offenses but not sentenced on them," "[t]he defendant is not 'convicted' for purposes of R.C. 2941.25(A) until the sentence is imposed." *Id*. at ¶ 17, 24. And, therefore, merger of allied offenses occurs at sentencing. *Id*. at ¶ 18.

{¶27} Here Kunzer, was indicted on intimidation in violation of R.C. 2921.03 and retaliation in violation of R.C. 2921.05. Intimidation under R.C. 2921.03 provides, in its relevant part, as follows:

> (A) No person, knowingly and by force, by *unlawful threat of harm* to any person * * * shall attempt to influence, intimidate, or hinder a public servant , [sic] party official, or witness in the discharge of the person's duty.

(Emphasis added.) R.C. 2921.03(A).

{¶28} Retaliation under R.C. 2921.05 provides, in its pertinent part:

> (A) No person, purposely and by force or by *unlawful threat of harm* to any person * * *, shall retaliate against a public servant, a party official, or an attorney or witness who was *involved in* a civil or *criminal action or proceeding* because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

(Emphasis added.) R.C. 2921.05(A).

{¶29} Notwithstanding whether Kunzer's intimidation findings of guilt under R.C. 2921.03 and retaliation findings of guilt under R.C. 2921.05 merged for the purposes of sentencing, it was permissible for the State to charge both offenses

in the same charging instrument. *See* R.C. 2941.25(A). *See also State v. Solomon*, 3d Dist. Marion No. 9-03-58, 2004-Ohio-2795, ¶ 15. Indeed, under R.C. 2941.25(A), the State is expressly authorized to bring charges, even if they are allied offenses, but Kunzer may not be convicted on both. *Id.* That is, the State is permitted to charge allied offenses of similar import in the same indictment in separate counts, if, they were based on the same act or transaction. *Id.* at ¶ 16 citing R.C. 2941.25(B) and Crim.R. 8(A). The State is not required to elect between different counts or offenses in the indictment and a defendant may be found guilty of any number of the charged offenses. *See Whitfield*, at ¶ 18, *superseded by state statute on other grounds*, *Mackey* at *2, fn. 4. R.C. 2941.04. Accordingly, we conclude that the trial court did not err in permitting Kunzer to be charged with intimidation and retaliation under the same indictment and tried simultaneously.

{¶30} Accordingly, Kunzer's first assignment of error is overruled

**Assignment of Error No. V**

**The trial court and jury errored [sic] in convicting the defendant-appellant of a count of intimidation in violation of R.C. 2921.03 where there was no showing of a prior court action involving the victim or that the victim even knew the defendant-appellant.**

**Assignment of Error No. III**

**The defendant-appellant was erroneously convicted of both intimidation under R.C. 2921.03 and retaliation under R.C. 2921.05(A) where the evidence supporting such convictions was the testimony from the staff of the attorney of the defendant-**

**appellant and there was a reasonable expectation that such privileged communications would not be disseminated.**

**Assignment of Error No. IV**

**The trial court and jury errored [sic] in relying upon the defendant-appellant's statements of desires and wishes, although concerning potential physical harm to others as a basis to convict the defendant-appellant of both intimidation under R.C. 2921.03 and retaliation under R.C. 2921.05(A).**

{¶31} In his fifth, third, and fourth assignments of error, Kunzer argues that his intimidation convictions under Counts One, Two, Three, Eight, Ten, Eleven, Thirteen, Fifteen, and Nineteen of the indictment and his retaliation convictions under Counts Nine, Twelve, Fourteen, and Sixteen of the indictment are based on insufficient evidence. In particular, in his fifth assignment of error, Kunzer argues that the State was required to show (in Count Ten of the indictment) that a prior-court action involving the victim existed or that the victim knew Kunzer as a condition precedent to a violation of R.C. 2921.03. In his third assignment of error, Kunzer argues, that the evidence supporting his convictions for intimidation as to Counts Eight, Ten, Eleven, Thirteen, and Fifteen of the indictment under R.C. 2921.03 and his retaliation charges under Counts Nine, Twelve, Fourteen, and Sixteen of the indictment under R.C. 2921.05 are based on inadmissible evidence. And, in his fourth assignment of error, Kunzer argues that the evidence supporting his convictions as to Counts One, Two, Three, and Nineteen of the indictment for intimidation under R.C. 2921.03 are based on statements of "desires" or "wishes"

concerning "potential" physical harm which is insufficient to support his convictions for those counts.

*Standard of Review*

**{¶32}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 259 (1981), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)*, superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at 259-260. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19

("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

*Analysis*

**{¶33}** As an initial matter, the record reveals that Kunzer failed to renew his Crim.R. 29 motion at the conclusion of his case-in-chief at the conclusion of all the evidence. (*See* July 11, 2018 Tr. at 235-240). In order to preserve the issue of sufficiency on appeal, this court has held that "[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence." *State v. Hurley*, 3d Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 37, quoting *State v. Edwards*, 3d Dist. Marion No. 9-03-63, 2004-Ohio-4015, ¶ 6. Based on this precedent, Kunzer's failure to renew his Crim.R. 29 motion at the conclusion of his case-in-chief or at the conclusion of all evidence waived all but plain error on appeal. *Id.* at ¶ 37, citing *State v. Flory*, 3d Dist. Van Wert No. 15-04-18, 2005-Ohio-2251, ¶ 4, citing Edwards at ¶ 6.

**{¶34}** "However, '[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is

academic.'" *Id.* at ¶ 38, citing *Perrysburg v. Miller*, 153 Ohio App.3d 665, 2003-Ohio-4221, ¶ 57 (6th Dist.), quoting *State v. Brown*, 2d Dist. Montgomery No. 17891, 2000 WL 966161, *8 (July 14, 2000). "Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process, and constitutes a manifest injustice.'" *Id.*, quoting *Thompkins*, 78 Ohio St.3d at 386-387. Accordingly, we will proceed to determine whether the State presented sufficient evidence to support Kunzer's convictions. *See id. See also State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999).

{¶35} Kunzer was convicted of intimidation under R.C. 2921.03 and retaliation under R.C. 2921.05. As we stated above, intimidation under R.C. 2921.03 provides, in its relevant part, as follows:

> (A) No person, knowingly and by force, by *unlawful threat of harm* to any person * * * shall attempt to influence, intimidate, or hinder a public servant , [sic] party official, or witness in the discharge of the person's duty.

(Emphasis added.) R.C. 2921.03(A). Retaliation under R.C. 2921.05 provides, in its pertinent part:

> (B) No person, purposely and by force or by *unlawful threat of harm* to any person * * * shall retaliate against a public servant, * * * who was *involved in* a civil or *criminal action or proceeding* because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

(Emphasis added.) R.C. 2921.05(A).

**{¶36}** First, Kunzer argues that his intimidation conviction under Count Ten is based upon insufficient evidence because the State did not present any evidence demonstrating a prior-court action involving the victim or that the victim knew Kunzer as a condition precedent to a violation of R.C. 2921.03. Kunzer's arguments are meritless. The crime of intimidation does not require any connection between the victim and the defendant nor does it require a showing of prior-court action. *See* R.C. 2921.03(A). *Compare* RC. 2921.03 *with* R.C. 2921.04 and R.C. 2921.05.

**{¶37}** Next Kunzer argues that his intimidation convictions under Counts One, Two, Three, Eight, Ten, Eleven, Thirteen, Fifteen, and Nineteen and retaliation charges under Counts Nine, Twelve, Fourteen, and Sixteen are based on insufficient evidence because the state presented insufficient evidence that he made an unlawful threat of harm. In particular, and relating to Count Ten, Kunzer contends that the State presented insufficient evidence of an unlawful threat of harm because the evidence was inadmissible. We disagree for the reasons set forth in our analysis of Kunzer's second assignment of error. Specifically, our conclusion that the State presented admissible evidence (from Kunzer's prior trial counsel's law clerk) of an unlawful threat of harm of is sufficient evidence for the trier of fact to find Kunzer guilty beyond a reasonable doubt on his intimidation convictions under Counts Eight, Ten, Eleven, Thirteen, and Fifteen. Accordingly, Kunzer's convictions under Counts Eight, Ten, Eleven, Thirteen, and Fifteen are based on sufficient evidence.

{¶38} Turning to Kunzer sufficiency-of-the-evidence argument supporting his retaliation convictions under Counts Nine, Twelve, Fourteen and Sixteen of the indictment, we need not address those arguments because those findings of guilt were merged for the purposes of sentencing. *See State v. Turner*, 2d Dist. Clark No. 2017-CA-78, 2019-Ohio-144, ¶ 22, citing *State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013-Ohio-5682, ¶ 59-61 and *State v. Zimmer*, 8th Dist. Cuyahoga No. 104946, 2017-Ohio-4440, ¶ 9, quoting *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14. "When counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless" beyond a reasonable doubt. *Ramos* at ¶ 14, citing *State v. Powell*, 49 Ohio St.3d 255, 263 (1990), *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997).[1] *See State v. Henderson*, 7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-5123, ¶ 9 ("Courts have held, in merged offense cases, where there is sufficient evidence supporting the conviction of the state's elected offense for sentencing, it is harmless error if there was insufficient

---

[1] The Eighth District Court of Appeals expressed concern about blindly applying this principle and hypothesized that there could be a circumstance under which a challenge to an offense that is merged for purposes of sentencing would not be harmless beyond a reasonable doubt. *See State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 17. However, the Eighth District ultimately determined that it need not reach that issue in *Ramos* after reasoning that, "[f]or purposes of this appeal, our conclusion that the state offered legally sufficient evidence to prove the aggravated murder conviction renders our hypothetical moot." *Id.* at ¶ 18.

evidence to support the offenses that merged with the elected offense."), citing *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23, citing *Powell* at 263 (concluding that "[e]ven if evidence of kidnapping by restraint was insufficient to support conviction, the fact that the kidnapping by removal was based on sufficient evidence and merged with the kidnapping by restraint count means any error with the conviction was harmless beyond a reasonable doubt."), and citing *Croom* at ¶ 60-61 ("The Supreme Court has concluded that, even if there is insufficient evidence to support one count, where that count has been merged with another count, the error in rendering a verdict on that count is harmless beyond a reasonable doubt."), citing *Powell* at 263, and citing *State v. Washington*, 10th Dist. Franklin No. 09AP-424, 2009-Ohio-6665, ¶ 18. *See also Henderson* at ¶ 9 (applying this rationale to manifest-weight, jury-instruction, and indictment-related arguments), citing *State v. Springer*, 8th Dist. Cuyahoga No. 104649, 2017-Ohio-8861, ¶ 15, *Ramos* at ¶ 14, and *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 18.

{¶39} Moreover, in this case, error, if any, with respect to the sufficiency of the evidence as to Kunzer's retaliation charges under Counts Nine, Twelve, Fourteen, and Sixteen is harmless beyond a reasonable doubt because those counts were merged with Counts Eight, Eleven, Thirteen, and Fifteen, respectively. *Compare Ramos* at ¶ 13 ("Error, if any, with respect to the sufficiency

of the evidence on the felonious assault, domestic violence, and kidnapping counts is harmless because those counts were merged into the life sentence imposed for aggravated murder under Count 2."). More specifically, Kunzer was not *convicted* of those offenses because the trial court merged those offenses for purposes of sentencing. *See Turner* at ¶ 22 ("A conviction does not exist where there has been a guilty verdict * * * but no sentence."), quoting *Croom* at ¶ 59, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 12. *See also Ramos* at ¶ 16 (noting that "a second line of thought has developed" suggesting that "if a sentence for an allied offense was merged into another sentence, the defendant was not actually 'convicted' of the allied offense"), citing *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶ 24. Indeed, the Supreme Court of Ohio has explicitly stated that a "conviction" requires both a finding of guilt and a sentence. *Ramos* at ¶ 16, citing *State v. Henderson*, 58 Ohio St.2d 171, 178 (1979). For these reasons, we need not address Kunzer's arguments challenging the sufficiency of the evidence in regards to the retaliation charges under Counts Nine, Twelve, Fourteen, and Sixteen. *See Ramos* at ¶ 13, 18.

{¶40} Finally, Kunzer argues that his intimidation convictions under Counts One, Two, Three, and Nineteen are also based on insufficient evidence because the State presented insufficient evidence that Kunzer made an "unlawful threat of harm." We disagree.

{¶41} The State presented evidence that Kunzer made repeated threats against the three law enforcement officers prior to and during the course of his arrest and during his transport to the Crawford County Jail after his arrest. (July 11, 2018 Tr. at 105, 133, 135, 143). In our review, we conclude that Kunzer's threats made directly to the officers are sufficient evidence to prove the element of an unlawful threat of harm. Thus, Kunzer's intimidation convictions under Counts One, Two, and Three, those convictions are based on sufficient evidence.

{¶42} Next, regarding Count Nineteen, Kunzer argues that his conviction for intimidation is merely a statement of a "desire" or a "wish" concerning "potential physical harm" which is insufficient to support his conviction. We disagree. As to Count Nineteen, Kunzer (upon his return from a medical furlough) made a threat against one of the transport officers to a Crawford County Jail correctional officer (during booking intake). Specifically, Kunzer stated that "had he been unshackled he would have grabbed one of the deputy's guns and killed [the transport officer] due to him being the reason why his girlfriend was dead." (*Id*. at 222). The transport officer is both a special deputy for the Crawford County Sheriff's Office and a probation officer. The Crawford County Jail correctional officer testified that Kunzer blamed the transport officer for the overdose death of his girlfriend because the officer failed to arrest her for a probation violation which may have prevented the overdose. (*Id.* at. 190, 191, 222). At the time Kunzer made his threat to kill the

transport officer, he still had the privilege of a medical furlough. (*Id*. at 193, 205-206). And in addition to that threat, the jury had also heard testimony regarding Kunzer's plan to escape while on medical furlough and to kill others. (*Id*. at 164, 168-171, 176, 178, 181, 232). We conclude that this statement made by Kunzer was not a "desire" or a "wish" as characterized, but rather, an unlawful threat of harm that was a statement indicating what he intended to do — made to a person who was likely to communicate this unlawful threat of harm to others. *See State v. Khaliq*, 5th Dist. Licking No. 15-CA-64, 2016-Ohio-7859, (concluding statements made through a member of the Licking County Sheriff's Department could be reasonably presumed to be related to other law enforcement officers, even those outside the actual department). Because these statements are sufficient to prove the unlawful-threat-of-harm element of Kunzer's intimidation convictions under Counts One, Two, Three and Nineteen are also based on sufficient evidence.

{¶43} Accordingly, Kunzer's fifth, third, and fourth assignments of error are overruled.

{¶44} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, J., concurs.**

**PRESTON, J., concurs, and concurs in Judgment Only**
**as to Assn. of Error No I.**