THE STATE EX REL. LESLIE, APPELLEE AND CROSS-APPELLANT,

v. OHIO HOUSING FINANCE AGENCY ET AL., APPELLANTS
AND CROSS-APPELLEES.

[Cite as *State ex rel. Leslie v. Ohio Hous. Fin. Agency,*
105 Ohio St.3d 261, 2005-Ohio-1508.]

(No. 2004–0105—Submitted January 11, 2005—Decided April 13, 2005.)

O'CONNOR, J.

{¶ 1} In this case, we must decide whether the attorney-client privilege applies to state agencies and their in-house counsel when that counsel is not an Assistant Attorney General. After examining the scope and purpose of the attorney-client privilege, we conclude that the privilege applies to government clients and that notwithstanding various statutes cited in opposition, the privilege exists between a state agency and its in-house counsel even if that counsel is not an Assistant Attorney General.

{¶ 2} From August 2000 through February 2002, the Ohio Department of Development employed appellee and cross-appellant, attorney Mark A. Leslie, as its Chief of Compliance. In that capacity, Leslie's duties included conducting certain ministerial functions for appellant and cross-appellee Ohio Housing Finance Agency in compliance with state law. Effective March 1, 2002, the Department of Development terminated Leslie's employment.

{¶ 3} In October 2002, Leslie filed a complaint in the Court of Appeals for Franklin County naming appellants and cross-appellees Ohio Housing Finance

Agency, Chief Legal Counsel for the Department of Development, and the board members and other officials of the Ohio Housing Finance Agency as respondents. Leslie also named the State Treasurer, State Auditor, and two Ohio Department of Commerce officials as respondents. Leslie alleged that appellants and other respondents had violated certain laws. For example, Leslie claimed that the Ohio Housing Finance Agency had disbursed unclaimed funds in the form of loans that were not authorized by R.C. Chapter 175. Leslie requested a writ of mandamus to compel appellants and other respondents to cease the alleged illegal activities and to comply with the applicable law. Leslie further requested that the State Auditor perform audits to ensure compliance.

{¶ 4} On December 10, 2002, appellants and other respondents moved to dismiss Leslie's complaint. The State Auditor attached a 2001 audit to his dismissal motion. The court of appeals treated the auditor's motion as one for summary judgment and set times for Leslie to respond to the motions.

{¶ 5} On December 30, 2002, Leslie replied to the dismissal motions. His reply contained two lengthy endnotes describing various documents and explaining his discharge. On January 14, 2003, Leslie replied to the auditor's motion for summary judgment. He attached various documents, including several that disclosed legal advice from in-house counsel to Ohio Housing Finance Agency staff.

{¶ 6} On January 15, 2003, the court of appeals magistrate recommended granting the motions of appellants and other respondents and dismissing Leslie's mandamus claim. On January 16, 2003, the magistrate denied the auditor's summary-judgment motion as moot.

{¶ 7} On January 27, 2003, appellants, Ohio Housing Finance Agency, its staff, its board, and the Chief Legal Counsel of the Department of Development, moved to strike the endnotes from Leslie's December 30, 2002 reply to appellants' motion to dismiss, seal those portions protected by attorney-client privilege, and obtain a protective order to prohibit Leslie's disclosure of privileged records.

{¶ 8} On February 11, 2003, appellants filed a second motion to strike and seal and for a protective order. This motion related to Leslie's affidavit and attachments to his January 14, 2003 reply to the auditor's summary-judgment motion. Appellants claimed that the affidavit and certain attachments were protected by attorney-client privilege.

{¶ 9} On February 20, 2003, Leslie replied to the motions to strike and seal and for protective orders. Leslie again attached documents to his reply. Appellants moved to strike Leslie's February 20, 2003 reply as untimely.

{¶ 10} On June 17, 2003, the court of appeals adopted the magistrate's recommendation to dismiss Leslie's mandamus claim but stayed the dismissal

until the magistrate ruled upon the pending motions. On August 28, 2003, the magistrate recommended that the court of appeals (1) grant appellants' motion to strike the endnotes in Leslie's December 30, 2002 reply, (2) deny appellants' motion to seal and for a protective order on Leslie's December 30, 2002 reply, (3) deny appellant's motion to strike and seal and motion for a protective order on Leslie's January 14, 2003 reply, (4) grant appellants' motion to strike the attachments to Leslie's February 20, 2003 reply, and (5) deny appellants' motion to strike Leslie's February 20, 2003 response as untimely. The magistrate applied the court of appeals' precedent in *State ex rel. Olander v. French* (July 16, 1996), Franklin App. No. 96APD04–501, 1996 WL 403802, which held that the attorney-client privilege does not exist between a state agency and its in-house counsel unless the attorney is a member of the Attorney General's office.

{¶ 11} Appellants objected to the magistrate's decision. On December 9, 2003, the court of appeals overruled the objections and adopted the magistrate's decision. Nevertheless, two of the three court of appeals' judges "reluctantly" concurred "because *Olander* has not been overruled and remains the law in this district." These judges believed that *Olander* "was wrongly decided."

{¶ 12} On January 16, 2004, appellants filed their notice of appeal, and on January 20, 2004, Leslie cross-appealed. The cause is now before this court upon an appeal and cross-appeal as of right.

{¶ 13} On July 14, 2004, we granted the parties' requests for oral argument. *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 102 Ohio St.3d 1528, 2004-Ohio-3580, 811 N.E.2d 1148. On January 11, 2005, we heard oral argument on this appeal and cross-appeal.

### Appeal: Attorney–Client Privilege

{¶ 14} Appellants assert that the court of appeals erred in applying *State ex rel. Olander v. French* (July 16, 1996), Franklin App. No. 96APD04–501, 1996 WL 403802, in which the court of appeals held that the "attorney-client privilege does not exist between members of a given state agency or department except the Office of the Attorney General." Appellants claim that eight of the attachments to Leslie's January 14, 2003 reply to the auditor's motion for summary judgment and one of Leslie's attachments to his February 20, 2003 reply to appellants' motions to strike and seal and for protective orders should have been stricken from the record and sealed based on attorney-client privilege.

{¶ 15} Leslie counters that the attorney-client privilege does not apply to in-house counsel of state agencies and that the court of appeals properly applied its *Olander* precedent to exempt the challenged records from the privilege.

{¶ 16} For the following reasons, we find that rejecting Leslie's contentions and the court of appeals' *Olander* decision is consistent with the weight of precedent and markedly advances the purpose of the attorney-client privilege.

### *Attorney–Client Privilege: Purpose and Elements*

{¶ 17} "The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience." Evid.R. 501.

{¶ 18} In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law. See, e.g., R.C. 2317.02(A), which provides that in general, an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client"; see, also, *State v. McDermott* (1995), 72 Ohio St.3d 570, 574, 651 N.E.2d 985, distinguishing *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754 ("The *Post* court, therefore, recognized a judicially created attorney-client privilege where, without the presence of the attorney, the communications between the client and * * * the attorney's agent[ ] were deemed privileged. The court then properly decided how that *common-law attorney-client privilege* could be waived. The circumstances of waiver recognized in that case have no relationship to communications that fall squarely within the *statutory privilege* based on direct communications between attorneys and clients"). (Emphasis added.)

{¶ 19} "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States* (1998), 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379. The privilege dates at least to "the reign of Elizabeth I, where the privilege was already well established." *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 660, 635 N.E.2d 331.

{¶ 20} "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584; *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003-Ohio-7257, 802 N.E.2d 732, ¶ 7. "[B]y protecting client communications designed to obtain legal advice or assistance, the client will be more candid and will disclose all relevant information to his attorney, even potentially damaging and embarrassing facts." (Footnote omitted.) 1 Rice, Attorney–Client Privilege in the United States (2d Ed.1999) 14–15, Section 2.3; *Taylor v. Sheldon* (1961), 172 Ohio St.

118, 121, 15 O.O.2d 206, 173 N.E.2d 892 ("the purpose of this rule is to permit complete freedom of disclosure by a client to his attorney without fear that any facts so disclosed will be used against him").

{¶ 21} Under the attorney-client privilege, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by·himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter* (C.A.6, 1998), 134 F.3d 351, 355–356; *Perfection Corp. v. Travelers Cas. & Sur. Co.,* 153 Ohio App.3d 28, 2003-Ohio-2750, 790 N.E.2d 817, ¶ 12. Except under circumstances not relevant here, only the client can waive the privilege. See *Allen Cty. Bar Assn. v. Williams,* 95 Ohio St.3d 160, 2002-Ohio-2006, 766 N.E.2d 973, ¶ 9–14.

*Attorney–Client Privilege: Extension to Government Clients*

{¶ 22} Courts have held that the attorney-client privilege applies to pertinent communications between attorneys and their corporate clients. See, e.g., *Upjohn,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (communications made by corporate employees acting at direction of corporate superiors in order to secure legal advice for corporation from corporate counsel are protected by attorney-client privilege); *Am. Motors Corp. v. Huffstutler* (1991), 61 Ohio St.3d 343, 575 N.E.2d 116 (former attorney-employee of corporation enjoined from disclosing matters covered by attorney-client privilege); 1 Rice, Attorney–Client Privilege in the United States, at 53, Section 3:14 ("The confidential communications between in-house counsel and th[e] client are privileged to the same extent as communications between outside retained counsel and the clients who have consulted them for legal advice or assistance").

{¶ 23} In the related context of attorney-employees of government entities, "[t]here is surprisingly little case law on whether a government agency may also be a client for purposes of this privilege * * *." *In re Witness Before Special Grand Jury 2000–2* (C.A.7, 2002), 288 F.3d 289, 291. Nevertheless, the weight of existing authority applies the attorney-client privilege to confidential communications between government agencies and their attorney-employees. 1 Rice, Attorney–Client Privilege in the United States, at 124, Section 4:28 ("When government agencies consult with legal counsel for the purpose of obtaining legal advice or assistance (regardless of whether it be in-house agency counsel, attorneys from the Department of Justice, or outside counsel) the attorney-client privilege protects its communications to those attorneys"); 1 Strong, McCormick on Evidence (5th Ed.1999) 355, Section 88 ("more recently the privilege has been held to extend to communications to an attorney representing the state"); Restatement of the Law 3d, Law Governing Lawyers (2000), Section 74 ("the

attorney-client privilege extends to a communication of a governmental organization * * * and of an individual employee or other agent of a governmental organization as a client"); *Green v. Internal Revenue Serv.* (N.D.Ind.1982), 556 F.Supp. 79, 85, affirmed (C.A.7, 1984), 734 F.2d 18 (privilege "also unquestionably is applicable to the relationship between Government attorneys and administrative personnel").

{¶ 24} In Ohio, courts have consistently recognized that "[r]ecords of communications between attorneys and their state-government clients pertaining to the attorneys' legal advice are excepted from disclosure under R.C. 149.43(A)(1) since the release of these records is prohibited by state law"—i.e., they are protected by this state's attorney-client privilege. *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 249, 643 N.E.2d 126; *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 542, 721 N.E.2d 1044; *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 383, 700 N.E.2d 12; *Woodman v. Lakewood* (1988), 44 Ohio App.3d 118, 541 N.E.2d 1084.

{¶ 25} Leslie challenges this precedent by contending that R.C. 2317.02(A), the statutory attorney-client privilege, does not apply to government clients. Leslie further claims that the privilege should be limited to trial-preparation materials and that the authority extending the privilege to government entities subverts R.C. 149.43, Ohio's Public Records Act, and R.C. 124.341, Ohio's whistleblower-protection statute for state employees.

{¶ 26} Leslie's claims lack merit. Even assuming that R.C. 2317.02(A) does not extend attorney-client privilege to government entities (see R.C. 2317.021, defining "client"), the common-law attorney-client privilege recognized in Ohio would apply. See *McDermott*, 72 Ohio St.3d at 574, 651 N.E.2d 985; *Post*, 32 Ohio St.3d 380, 513 N.E.2d 754 (recognizing a judicially created attorney-client privilege); *Ex Parte Martin* (1943), 141 Ohio St. 87, 101, 25 O.O. 225, 47 N.E.2d 388 (same). R.C. 2317.02(A), by its very terms, is a mere testimonial privilege precluding an attorney from testifying about confidential communications. The common-law attorney-client privilege, however, "reaches far beyond a proscription against testimonial speech. The privilege protects against any dissemination of information obtained in the confidential relationship." *Am. Motors*, 61 Ohio St.3d at 348, 575 N.E.2d 116.

{¶ 27} Admittedly, the government attorney-client privilege has been subject to some criticism. See, e.g., Melanie B. Leslie, Government Officials as Attorneys and Clients: Why Privilege the Privileged? (2002), 77 Ind.L.J. 469,[1] and Rule

---

1. This law journal article concludes, "The reflexive assumption that a government attorney-client privilege is necessary to ensure that government actors communicate openly with government is a fiction. At most, government entities should be able to claim a limited litigation privilege that

502(d)(7) of the Revised Uniform Rules of Evidence (1999). Nevertheless, the prevailing rule remains that "governmental agencies and employees enjoy the same privilege as [their] nongovernmental counterparts." Restatement of the Law 3d, Law Governing Lawyers (2000), Section 74, Comment *b*. Significantly, Ohio has not adopted Rule 502(d)(7) of the Revised Uniform Rules of Evidence (1999).

{¶ 28} Moreover, "courts generally have construed open-meeting, open-files, whistle-blower, and similar statutes as subject to the attorney-client privilege, recognizing that otherwise governments would be at unfair disadvantage in litigation, in handling claims and in negotiations." Id. at Comment *b*; see, e.g., *Orlando v. Desjardins* (Fla.1986), 493 So.2d 1027, 1029. Ohio courts are no exception. See, e.g., *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision* (1998), 81 Ohio St.3d 58, 62–63, 689 N.E.2d 32 ("common-law privileges, such as the attorney-client privilege, are state laws that prohibit release of public records" under Ohio's Public Records Act); *Shaffer v. OhioHealth Corp.*, Franklin App. No. 03AP–102, 2004-Ohio-63, 2004 WL 35725 (in action for unlawful termination under Ohio whistleblower statute, attorney-client privilege applied to communications between corporate counsel and corporate president who was later fired).

{¶ 29} We also do not share Leslie's fears that governmental entities will blatantly attempt to avoid public-record laws by using the attorney-client privilege as a shield against disclosure. Simply stated, an attorney does not become any less of an attorney by virtue of state agency employment. That is so even if the attorney's position includes performance of nonlegal or so-called ministerial duties. The privilege applies when legal advice of any kind is sought from the legal advisor in that capacity and the client's confidential communication relates to that purpose. In other words, Leslie's example of a corporation sending copies of memos to attorney-employees so as to hide them from the public misunderstands the limitations built into the privilege itself.

{¶ 30} Therefore, in Ohio, the attorney-client privilege extends to government agencies consulting with in-house counsel for legal advice or assistance.

### Attorney–Client Privilege: State Agencies: Olander and R.C. 109.02

{¶ 31} The court of appeals held that based on its decision in *Olander*, "the attorney-client privilege does *not* exist between a state agency and its in-house attorney *unless* the attorney is a member of the [Attorney General's] office." (Emphasis sic.) Leslie argues that R.C. 109.02 limits the attorney-client relation-

---

enables them to shield communications made in furtherance of trial preparation. This approach would be consistent with early case law. In addition, it would make government entities more accountable to the citizens they serve, at no cost to the government's ability to function effectively." Id. at 549–550.

ship in the state government context to the relationship between the state and attorneys representing it who are from the Attorney General's office. Thus, he claims, the attorney-client privilege does not extend to attorneys who are not employed by the Attorney General.

{¶ 32} R.C. 109.02 provides that with certain specified exceptions inapplicable here, the Attorney General is the chief law officer for the state and its departments, and no state board or officer shall be represented by other attorneys:

{¶ 33} "The attorney general is the chief law officer for the state and all its departments * * *. * * * [*N*]*o state officer or board, or head of a department or institution of the state shall employ, or be represented by, other counsel or attorneys at law.* The attorney general shall appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state is directly or indirectly interested. When required by the governor or the general assembly, the attorney general shall appear for the state in any court or tribunal in a cause in which the state is a party, or in which the state is directly interested.* * *" (Emphasis added.)

{¶ 34} R.C. 109.02 does not limit the attorney-client privilege in the state government context to communications with attorneys employed by the Attorney General's office, for the following reasons.

{¶ 35} First, the Supreme Court of Ohio has exclusive original jurisdiction over the "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Section 2(B)(1)(g), Article IV, Ohio Constitution; *Royal Indemn. Co. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617. Thus, the "exclusive authority to regulate the practice of law is vested in the Ohio Supreme Court." *In re Karasek* (1997), 119 Ohio App.3d 615, 631, 695 N.E.2d 1209; see, also, *Melling v. Stralka* (1984), 12 Ohio St.3d 105, 107, 12 OBR 149, 465 N.E.2d 857.

{¶ 36} Second, R.C. 109.02 is directed toward the legal *representation* of state agencies and officers in *courts or tribunals* instead of legal *advice* given by in-house counsel to state agencies and officers on day-to-day matters. The sentence at issue in R.C. 109.02 provides that "no state officer or board, or head of a department or institution of the state shall employ, or be *represented* by, other counsel or attorneys at law." (Emphasis added.) The next three sentences in R.C. 109.02 address instances in which the Attorney General appears in *courts or tribunals:* "The attorney general shall appear for the state in the *trial and argument of all civil and criminal causes in the supreme court* in which the state is directly or indirectly interested. When required by the governor or the general assembly, the attorney general shall appear for the state in *any court or tribunal* in a cause in which the state is a party, or in which the state is directly

interested. Upon the written request of the governor, the attorney general shall *prosecute any person* indicted for a crime." (Emphasis added.)

{¶ 37} Third, R.C. 109.02 does not specify any sanctions for the employment by state agencies of attorneys not employed by the Attorney General. More particularly, R.C. 109.02 does not purport to preclude a state agency's attorneys from giving legal advice. Nor does R.C. 109.02 specify that legal advice given by in-house counsel to state agencies and officials is not covered by the attorney-client privilege.

{¶ 38} Fourth, R.C. 121.14 permits state departments to "employ, subject to the civil service laws in force at the time the employment is made, the necessary employees." One of the state departments created by the General Assembly is Leslie's former employer, the Ohio Department of Development. R.C. 121.01(A) and 121.02(N).

{¶ 39} Fifth, precedent supports appellants' position that R.C. 109.02 does not preclude attorneys employed by state agencies like the Department of Development from engaging in the practice of law. In *State ex rel. Devine v. Schwarzwalder* (1956), 165 Ohio St. 447, 451–454, 60 O.O. 95, 136 N.E.2d 47, we held that notwithstanding R.C. 109.02, a respondent who served as attorney-examiner and Chief of the Permit Division of the Department of Liquor Control was actively engaged in the practice of law so as to be entitled to have these employment periods added to the five-year period specified in R.C. 1901.06 so as to qualify him for the office of municipal court judge. We emphasized that much more recent statutes, see, e.g., R.C. 121.02 and 121.14, permitted state agencies like the Department of Liquor Control to employ necessary employees, including attorneys, despite R.C. 109.02. Id. at 451–452, 60 O.O. 95, 136 N.E.2d 47.

{¶ 40} Leslie erroneously relies on the views of dissenting opinions never adopted by the court, see *Devine,* 165 Ohio St. at 454–455, 60 O.O. 95, 136 N.E.2d 47 (Taft, J., dissenting), and case law that has been overruled. See *State ex rel. Flynn v. Cuyahoga Bd. of Elections* (1955), 164 Ohio St. 193, 57 O.O. 402, 129 N.E.2d 623, overruled by *State ex rel. Schenck v. Shattuck* (1982), 1 Ohio St.3d 272, 1 OBR 382, 439 N.E.2d 891.

{¶ 41} Sixth, at most, R.C. 109.02 recognizes the Attorney General as the primary counsel for state agencies and officials focusing on in-court representation. Nothing in R.C. 109.02 prohibits the Attorney General from assenting to certain representation for state agencies and officials by other counsel. This assent is reflected in a September 1999 memorandum of understanding between the Attorney General and the Governor. In that memorandum, the Attorney General and Governor "recognized that [state agencies and officials] need[ ] attorney employees to provide legal advice to properly address the complex issues which confront [them] on a daily basis" and that legal communications

between state agencies and officials and their in-house counsel "are subject to attorney-client privilege." In fact, even the Attorney General can waive the right to invoke R.C. 109.02. See *DeRolph v. State* (2001), 94 Ohio St.3d 40, 42, 760 N.E.2d 351 ("The time has now passed for the Attorney General to object, and we find that the state has waived its right to challenge the separate appearance of the officials * * * or their representation by separate counsel").

{¶ 42} Finally, Leslie's construction of R.C. 109.02 might lead to the absurd result that his own employment as an attorney with the Department of Development was prohibited. See *State ex rel. Webb v. Bliss,* 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 22 (court has duty to construe statutes to avoid unreasonable or absurd results).

## Conclusion: Appeal on Attorney–Client Privilege

{¶ 43} In sum, the communications by attorney-employees of the state departments in question were subject to the attorney-client privilege and should have been sealed. This furthers the laudatory objectives of the privilege: complete and candid communication between attorneys and clients. It also clarifies that the privilege extends to confidential communications between attorneys and their state-agency clients, notwithstanding R.C. 109.02. It further enhances the efficiency of state agencies. By so holding, we reject *Olander,* the solitary case that held otherwise, which even the panel of the same court of appeals in this case believed was "wrongly decided."

{¶ 44} Based on the foregoing, we reverse the judgment of the court of appeals insofar as it failed to seal and grant protective orders concerning Attachments 3, 4, 5, 6, 11, 14, 15, and 16 to Leslie's January 14, 2003 reply, and Attachment I to Leslie's February 20, 2003 reply.

## Cross–Appeal

{¶ 45} In his cross-appeal, Leslie contends that the court of appeals erred in dismissing his mandamus claim.

{¶ 46} We affirm the dismissal of Leslie's claim for the following reasons.

{¶ 47} First, Leslie did not have the requisite standing. He has shown neither a personal stake in the outcome of his lawsuit nor a special interest in the funds involved. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 469, 715 N.E.2d 1062; *Cleveland ex rel. O'Malley v. White,* 148 Ohio App.3d 564, 2002-Ohio-3633, 774 N.E.2d 337, ¶ 34. This is also not a "rare and extraordinary case" warranting invocation of the public-right exception to the personal-stake requirement of standing. *Ohio Academy,* 86 Ohio St.3d at 503–504, 715 N.E.2d 1062; *State ex rel. Ohio AFL–CIO v. Ohio Bur. of Workers' Comp.,* 97 Ohio St.3d 504, 2002-Ohio-6717, 780 N.E.2d 981, ¶ 11–12.

{¶ 48} Second, as the court of appeals determined, the writ of mandamus requested by Leslie is so broad that it would be extremely difficult to implement. "It has been long and well established that *it is the duty of every judicial tribunal* to decide actual controversies between parties legitimately affected by specific facts and *to render judgments which can be carried into effect.*" (Emphasis added.) *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371.

{¶ 49} Third, Leslie's requested relief consists of little more than future compliance with various statutes. "[A] writ of mandamus will not issue to compel the general observance of laws in the future." *State ex rel. Kirk v. Burcham* (1998), 82 Ohio St.3d 407, 409, 696 N.E.2d 582.

{¶ 50} Fourth, Leslie's writ is an ill-disguised request for (1) a declaratory judgment that appellants are not complying with various legal requirements and (2) a prohibitory injunction preventing appellants from continuing these alleged illegal practices in the future. Neither this court nor courts of appeals have jurisdiction over these claims. *State ex rel. Maloney v. Sherlock,* 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 53; *State ex rel. McGrath v. Ohio Adult Parole Auth.,* 100 Ohio St.3d 72, 2003-Ohio-5062, 796 N.E.2d 526, ¶ 6.

## Conclusion

{¶ 51} Therefore, we reverse the portion of the court of appeals' judgment that relies on *Olander* and holds that the attorney-client privilege is inapplicable. We affirm the remainder of the court of appeals' judgment.

Judgment affirmed in part
and reversed in part.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

———

Mark A. Leslie, pro se.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, and Sharon A. Jennings, Assistant Attorney General, for appellants and cross-appellees.