[Cite as *Smith v. Ohio State Univ. Office of Compliance & Integrity*, 2022-Ohio-2657.]

| | |
|---|---|
| SCOTT ELLIOT SMITH | Case No. 2021-00400PQ |
| Requester | Judge Patrick E. Sheeran |
| v. | <u>DECISION AND ENTRY</u> |
| OHIO STATE UNIVERSITY OFFICE OF COMPLIANCE AND INTEGRITY | |
| Respondent | |

{¶1} Respondent Ohio State University Office of Compliance and Integrity (OSU) objects to a Special Master's Report and Recommendation in this public-records case. The Court sustains some of OSU's objections, overrules some of OSU's objections, and concludes that one of OSU's objections is moot.

## I.  Background

{¶2} On May 27, 2021, Requester sought documents from OSU through a public-records request.[1] The requested documents concern a program that Requester referred

---

[1]    Requester sought the following:

1-  All contracts or agreements with Matt Garretson and/or Wolf Garretson concerning the administration of the Strauss Individual Settlement Program (the "Settlement");

2-  All documents or communications concerning the criteria, factors, or allocation formula Matt Garretson (including Mr. Garretson himself, the firm of Wolf Garretson, and any agent or employee of Mr. Garretson and/or Wolf Garretson) will use to determine the Individual Settlement Amounts for those that participate in the Strauss Individual Settlement Program, including but not limited to allocating award amounts within the tier range and the Extraordinary Injury Fund award;

3-  All documents authored by, or shared with, Matt Garretson (including Mr. Garretson himself, the firm of Wolf Garretson, and any agent or employee of Mr. Garretson and/or Wolf Garretson) concerning the Tier Caps (e.g., the calculation of the Tier Caps or the potential impact of the Tier Caps on reducing the tier range) for the Strauss Individual Settlement Program;

4-  All documents authored by, or shared with, Matt Garretson (including Mr. Garretson himself, the firm of Wolf Garretson, and any agent or employee of Mr. Garretson and/or Wolf Garretson) concerning the Extraordinary Injury Fund Total Cap (e.g., the calculation of the Extraordinary Injury

to in the request as the "Strauss Individual Settlement Program."  OSU represents that the Strauss Individual Settlement Program is related to civil litigation against OSU in a federal district court.[2]

{¶3} OSU failed to produce all the requested documents.  Requester thereafter filed a complaint against OSU in this Court in which Requester alleged a denial of access to public records in violation of R.C. 149.43(B).  The Court appointed a Special Master who referred the case for mediation.  After mediation failed to successfully resolve all disputed issues between the parties, the case was returned to the docket of the Special Master.  OSU later moved to dismiss Requester's Complaint.

{¶4} On May 12, 2022, the Special Master issued a Report and Recommendation (R&R).  The Special Master identified issues raised in the case as follows: "The issues in this action are 1) what records responsive to the requests are in the possession or under the jurisdiction of OSU, and 2) what portions of these records fall squarely within any exception to the [Ohio Public Records Act]."  (R&R, 4.)  The Special Master notes that the requests "expressly include OSU records kept in the possession of counsel Carpenter

---

Fund Total Cap or the potential impact of the Extraordinary Injury Fund Total Cap on reducing the Extraordinary Injury Fund Individual Range Cap) for the Strauss Individual Settlement Program[.]

Requester advises in the Complaint that he made a fifth request, which is not at issue in this case.

[2]     Respondent asserts that Requester "is counsel for plaintiffs in two of the 37 federal civil lawsuits filed against Respondent The Ohio State University in the United States District Court for the Southern District of Ohio related to the alleged misconduct of former Ohio State physician, Dr. Richard Strauss, during the 1978 to 1998 time period."  (Motion To Dismiss, 1.)  Respondent also asserts,

As a result of successful mediation efforts before U.S. District Court Judge Michael R. Barrett, Ohio State reached group settlements totaling $46.7 million with ten plaintiffs' firms representing a total of 185 plaintiffs (an average of $252,551.02) on March 6, 2020 (162 plaintiffs) and October 12, 2020 (23 plaintiffs).

Other plaintiffs, including those represented by Mr. Smith, chose to continue with their claims against Ohio State. On May 3, 2021, as part of Ohio State's continued efforts to bring closure for Strauss survivors, Ohio State announced it would be offering the Program.

(Motion To Dismiss, 2.)

Lipps & Leland LLP ('CLL') as an agent of the university."  (R&R, 4.)  The Special Master further notes:

> The Strauss Individual Settlement Program is OSU's responsibility, and thus "Ohio State necessarily approved the parameters of the final version of the Program Documents that were publicly posted [online]." (Sur-reply, Barthel Aff. at ¶ 8.) However, OSU delegated the design and drafting of the Program Documents to various agents. "CLL was appointed by the Ohio Attorney General's Office to serve as Special Counsel" (Response, Barthel Aff. at ¶ 2) to represent OSU in "settling the litigation against it." (Sur-reply at 5, Barthel Aff. at ¶ 1, 8-10.) In performing this fiduciary role, CLL served at OSU's direction and on OSU's behalf. CLL was tasked with designing the Strauss Individual Settlement Program.
>
> In turn, CLL retained attorney Matt Garretson and Wolf Garretson LLC ("WG") "to assist CLL regarding the design of the Program and to independently administer the Program." (Response at 13, Barthel Aff. at ¶ 5; Sur-reply, Barthel Aff. at ¶ 8.) Because CLL was acting as an agent and not the principal for this duty, it is also correct to say that "OSU has retained the services of Matthew Garretson to independently administer the Program." (Emphasis added.) (Response, Exh. A Program Description at OSU 000008, -000035, and -000065.) Regardless of what obligations WG did or did not owe directly to OSU in the program design role, the actions of CLL in designing and drafting the Program are imputed to and have been approved by its principal, OSU.

(R&R, 5-6.)   The Special Master has determined that responsive records in the possession of Carpenter Lipps & Leland LLP are public records of OSU by either direct agency, or under the quasi-agency test.  The Special Master states, "OSU provides only conclusory assertions that the withheld records constitute attorney-client, attorney work-

product, trial preparation, expert witness material, and Prof.Conduct R.1.6 material. In response to the court's invitation to produce evidence for the elements of each exception, OSU has merely repeated the text of the exceptions, none of which are apparent from the records themselves."  (R&R, 9.)

{¶5} The Special Master recommends denying OSU's motion to dismiss, because the matter has been fully briefed on grounds that have been subsumed in arguments to deny the claim on the merits. (R&R, 3.)  The Special Master further "recommends the court issue an order granting the claim for production of all withheld records filed under seal. It is recommended the court order that requester is entitled to recover from respondent the costs associated with this action that he has incurred, including the twenty-five-dollar filing fee. R.C. 2743.75(F)(3)(b)."  (R&R, 28.)

{¶6} On May 25, 2022, OSU filed objections to the R&R.  OSU asks the Court to sustain its objections, grant its motion to dismiss, and enter judgment in its favor.

{¶7} Requester has not filed a timely written response to OSU's objections.

## II.     Law and Analysis

{¶8} R.C. 2743.75(F)(2) governs objections to a special master's report and recommendation.  Under R.C. 2743.75(F)(2), either party "may object to the report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested. * * * If either party timely objects, the other party may file with the clerk a response within seven business days after receiving the objection and send a copy of the response to the objecting party by certified mail, return receipt requested.  The court, within seven business days after the response to the objection is filed, shall issue a final order that adopts, modifies, or rejects the report and recommendation."

{¶9} Pursuant to R.C. 2743.75(F), any objection to a report and recommendation "shall be specific and state with particularity all grounds for the objection." OSU presents eight objections:

"**Objection 1: The Special Master Erred In Finding That Responsive Documents in CLL's Possession Were Public Records Of Ohio State 'By Either Direct Agency, or Under The Quasi-Agency Test.'**

"**Objection 2: The Special Master Erred in Finding That None Of The 'Claimed Exceptions' To The Public Records Act Applied.**

"**Objection 3: The Special Master Erred In Finding That The Common Law Attorney-Client Privilege Did Not Apply.**

"**Objection 4: The Special Master Erred In Finding That The Trial Preparation Records Exception To The Public Records Act Did Not Apply.**

"**Objection 5: The Special Master Erred In Finding That The Attorney Work Product Doctrine Did Not Apply.**

"**Objection 6: The Special Master Erred In Finding That The Non-Testifying Consultant Privilege Did Not Apply.**

"**Objection 7: The Special Master Erred In Finding That Rule 1.6 Of the Ohio Rules of Professional Conduct Did Not Apply.**

"**Objection 8: The Special Master Erred In Finding That No Portion Of The Responsive Documents Contained Privileged Or Protected Information.**"

{¶10} The Court considers OSU's relevant objections together for ease of analysis.

{¶11} Here, the material requested by Requester consists of the sealed material that has been provided to the Court, which concerns information involving communications between Wolf Garretson LLC and Carpenter Lipps & Leland LLP, as agent and principal, about the implementation of The Ohio State University's program to reimburse victims of the alleged misconduct of former Ohio State physician, Dr. Richard Strauss.

{¶12} Under Ohio law, exceptions to disclosure under the Ohio Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. *Cincinnati Enquirer* at ¶ 10. Because OSU has refused to provide requested records, OSU is required to show that the withheld records fall squarely within a statutory exception. *See State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23.

{¶13} R.C. 149.43 pertains to the availability of public records. For purposes of R.C. 149.43, a "public record" "means records kept by any public office[.]" R.C. 149.43(A)(1). *See* R.C. 149.011(G) (defining the term "records," as used in R.C. Chapter 149).[3] A public record, however, does not include trial preparation records, R.C. 149.43(A)(1)(g), or records the release of which is prohibited by state or federal law. R.C. 149.43(A)(1)(v).

---

[3]     R.C. 149.011 provides, "As used in this chapter, except as otherwise provided: * * * (G) 'Records' includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in [R.C.1306.01], created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

**{¶14}** For purposes of R.C. 149.43, a trial preparation record "means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney." R.C. 149.43(A)(4). Under Ohio law, settlement documents do not constitute a "trial preparation record" for purposes of R.C. 149.43(A)(4). *State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 17. In *Dupuis*, the Ohio Supreme Court determined that an Ohio appellate court erred when the appellate court concluded that a proposed settlement agreement was exempt from disclosure as a trial-preparation record. *Dupuis* at ¶ 17. The Ohio Supreme Court stated,

> As the appellate court in *State ex rel. Kinsley v. Berea Bd. of Edn.* (1990), 64 Ohio App.3d 659, 663, 582 N.E.2d 653, 7 Anderson's Ohio App. Cas. 318, observed in rejecting a comparable argument concerning the applicability of the trial-preparation exemption to a settlement agreement:
>
>> "A settlement agreement is not a record compiled in anticipation of or in defense of a lawsuit. It simply does not prepare one for trial. A settlement agreement is a contract negotiated with the opposing party to prevent or conclude litigation."
>
>> Similarly, a settlement proposal received by a public office is not a record compiled in anticipation of or in defense against a lawsuit. It is simply an offer intended to prevent or conclude litigation.

*Dupuis* at ¶ 18-19. In this instance, any settlement offer by OSU was intended to prevent or conclude litigation; it was not compiled in anticipation of, or in defense against, any lawsuits brought against OSU. Additionally, any documents not compiled in anticipation of, or in defense against, lawsuits brought against OSU are not protected by the work

product doctrine or the consulting expert privilege, a subset of the work product doctrine. *See Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 54-55 (discussing work product doctrine, which provides a qualified privilege protecting an attorney's mental processes in preparation of litigation);[4] *DMS Constr. Ents., L.L.C. v. Homick*, 8th Dist. Cuyahoga No. 109343, 2020-Ohio-4919, ¶ 29 (the "consulting expert 'privilege' is a subset of the work product doctrine. An expert consultant's work product — the expert consultant's knowledge of the facts, opinions and conclusions — are part of the work product of the attorney who retained the expert").

---

[4]    In *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 54-55, the Ohio Supreme Court explained:

> The work-product doctrine emanates from *Hickman v. Taylor* (1947), 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451, in which the Supreme Court of the United States recognized that "[p]roper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. * * * This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways - aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

> Addressing these concerns, the work-product doctrine provides a *qualified* privilege protecting the attorney's mental processes in preparation of litigation, establishing "a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Hobley v. Burge* (C.A.7, 2006), 433 F.3d 946, 949. However, as the Supreme Court of the United States has explained, "the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system," and the privilege afforded by the work-product doctrine is not absolute. *United States v. Nobles* (1975), 422 U.S. 225, 238, 95 S. Ct. 2160, 45 L. Ed. 2d 141and 239, 95 S. Ct. 2160, 45 L. Ed. 2d 141.

**{¶15}** In the Court's view, the communications at issue may not be reasonably considered either attorney work product or trial preparation records, as none of the sealed notes relate to having been prepared in anticipation of litigation. The Court therefore overrules OSU's fourth, fifth, and sixth objections.

**{¶16}** Under the Ohio Public Records Act, if a state law or federal law prohibits the release of a record, then such a record does not constitute a public record for purposes of the Ohio Public Records Act. *See* R.C. 149.43(A)(1)(v). In common usage, the term "law" may be defined as the "aggregate of legislation, judicial precedents, and accepted legal principles; the body of authoritative grounds of judicial and administrative action; esp., the body of rules, standards, and principles that the courts of a particular jurisdiction apply in deciding controversies brought before them." *Black's Law Dictionary* 1056 (11th Ed.2019). The term "law," as used in R.C. 149.43(A)(1)(v), thus includes constitutions, statutes, administrative rules, administrative decision, rules of professional conduct, and judicial precedents. *See* R.C. 1.42 (requiring words and phrases to be read in context and construed according to the rules of grammar and common usage); *Vossman v. Airnet Sys., Inc.*, 159 Ohio St.3d 529, 2020-Ohio-872, 152 N.E.3d 232, ¶ 14 (undefined terms in a statute are read as having their plain and ordinary meaning, and words that have acquired a particular meaning are construed accordingly).

**{¶17}** Ohio statutory law recognizes a testimonial privilege for attorney-client communications. R.C 2317.02. Ohio case law also recognizes a privilege for attorney-client communications. *See State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18 ("[i]n Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law"). In *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, discussing the concept of attorney-client privilege, the Ohio Supreme Court explained:

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States* (1998), 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379. As we explained in *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005 Ohio 1508, 824 N.E.2d 990, "'Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.' *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584; *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003 Ohio 7257, 802 N.E.2d 732, ¶ 7. '[B]y protecting client communications designed to obtain legal advice or assistance, the client will be more candid and will disclose all relevant information to his attorney, even potentially damaging and embarrassing facts.' (Footnote omitted.) 1 Rice, Attorney-Client Privilege in the United States (2d Ed.1999) 14-15, Section 2.3." *Leslie*, at ¶ 20.

*Squire, Sanders & Dempsey, L.L.P.* at ¶ 16. *See State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21 (discussing attorney-client privilege).[5]

---

[5]     In *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21, the Ohio Supreme Court stated: "Under the attorney-client privilege, '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.' *Reed v. Baxter* (C.A.6, 1998), 134 F.3d 351, 355-356; *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App. 3d 28, 2003 Ohio 3358, 790 N.E.2d 817, ¶ 12. Except under circumstances not relevant here, only the client can waive the privilege. * * *."  Notwithstanding that OSU withheld certain documents at issue and later produced them under seal pursuant to an order issued by the Special Master, it does not appear to the Court that waiver applies in this instance.

{¶**18**} Notably, in *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 27, the Ohio Supreme Court stated, "*The attorney-client privilege 'does not require the communication to contain purely legal analysis or advice to be privileged.  Instead, if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged.*' [*Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991].*" (Emphasis added.)  In *Toledo-Lucas County Port Authority*, at ¶ 28, quoting *Leslie* at ¶ 29, the Ohio Supreme Court stated: "'The [attorney-client] privilege applies when legal advice of any kind is sought from the legal advisor in that capacity and the client's confidential communication relates to that purpose.'" In *Toledo-Lucas County Port Authority* at ¶ 30-31, the Ohio Supreme Court further stated:

> As the Court of Appeals for New York reasoned in [*Spectrum Systems*, 78 N.Y.2d at 380, 575 N.Y.S.2d 809, 581 N.E.2d 1055.]:
>
> "Legal advice often begins--and may end--with a preliminary evaluation and a range of options. More than that may not be possible upon an initial investigation. Similarly, the absence of legal research in an attorney's communication is not determinative of privilege, so long as the communication reflects the attorney's professional skills and judgments. Legal advice may be grounded in experience as well as research." (Citation omitted.) Id. Accord *State ex rel. Alley v. Couchois* (Sept. 20, 1995), Miami App. No. 94-CA-30, 1995 Ohio App. LEXIS 4094, 1995 WL 559973.

{¶**19**} The Court concludes that the legal matter at issue was the possible settlement of individual cases that collectively may be described as the "Strauss litigation."  The Court respectfully disagrees with the Special Master's view that "OSU provides only conclusory assertions that the withheld records constitute attorney-client, attorney work-product, trial preparation, expert witness material, and Prof.Conduct R.1.6

material. In response to the court's invitation to produce evidence for the elements of each exception, OSU has merely repeated the text of the exceptions, none of which are apparent from the records themselves." (R&R, 9.)

{¶20} Upon review, the Court finds that the records at issue are between Matt Garretson and Wolf Garretson LLC and Carpenter Lipps & Leland LLP, from agent to principal, and vice versa. What is discussed in emails is implementation-content concerning a compensatory plan—the decision to go forward with some kind of compensatory plan had long since been made. The communications are not about legal strategy; rather they involve the back and forth between the attorneys (agent and principal) as to how to best implement the compensatory plan and the wording of the compensatory plan itself. The Court concludes that the wording of an agreement—i.e., what to include, what not to include, when to implement. etc.—calls for the exercise of judgment on the part of the agent and the principal, for the benefit of the client. When an attorney advises a client on a matter, the attorney certainly seeks to avoid having the client deal with litigation, but the attorney also is primarily concerned with arranging the best possible outcome for a client. Communications between lawyers retained by OSU, and agents retained by OSU's lawyers who are working on OSU's lawyers' behalf, which facilitate the rendition of legal services or advice, such as the Strauss Individual Settlement Program, are privileged. *See State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.* at ¶ 27, 30-31; *State ex rel. Ames v. Baker*, 11th Dist. Portage No. 2021-P-0046, 2022-Ohio-171, ¶ 43 (observing that the attorney-client privilege applies to agents working on behalf of legal counsel).

{¶21} The final approved version of the Strauss Individual Settlement Programs, however, is a public record, as are the other final approved versions of the four requests made by Requester, because the final approved versions are records that were created, or received by, or came under the jurisdiction of, OSU, and these records serve to document the organization, functions, policies, decisions, procedures, operations, of

OSU. *Compare* R.C. 149.43(A)(1) (the term "public record" "means records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, and records pertaining to the delivery of educational services by an alternative school in this state kept by the nonprofit or for-profit entity operating the alternative school pursuant to [R.C. 3313.533]") *with* R.C. 149.011(G) (the term "records" "includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in [R.C.1306.01], created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office").[6]The Ohio Supreme Court has remarked:

> As we have often stated, so long as a public record is kept by a government agency, it can never lose its status as a public record. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St. 3d 374, 378, 662 N.E.2d 334, 338; see, also, *State v. Williams* (2000), 88 Ohio St. 3d 513, 526, 728 N.E.2d 342, 356. Accordingly, even if a public record was

---

[6] In *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 30, the Ohio Supreme Court stated:

In *Kish v. Akron*, 109 Ohio St.3d 162, 2006 Ohio 1244, 846 N.E.2d 811, at ¶ 20, we recognized the expansive scope of the R.C. 149.011(G) definition of "records":

We previously have held that the General Assembly's use of "includes" in R.C. 149.011(G) as a preface to the definition of "records" is an indication of expansion rather than constriction, restriction, or limitation and that the statute's use of the phrase "any document" is one encompassing all documents that fit within the statute's definition, regardless of "form or characteristic." *State ex rel. Cincinnati Post v. Schweikert* (1998), 38 Ohio St.3d 170, 172-173, 527 N.E.2d 1230. There can be no dispute that there is great breadth in the definition of "records" for the purposes here. Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of "record." *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002 Ohio 7117, 781 N.E.2d 180, ¶ 13.

scheduled for disposal but was not destroyed, it remains a public record

kept by a government agency and is subject to the terms of R.C. 149.43.

*State ex rel. Dispatch Printing Co. v. City of Columbus*, 90 Ohio St.3d 39, 41, 734 N.E.2d 797 (2000).

**{¶22}** Upon review of the evidence, the Report and Recommendation, as well as OSU's arguments, this Court finds that OSU has sustained its burden to show that the withheld records, with the exception of the final approved versions, fall squarely within a statutory exception as the withheld records, except as just noted, facilitate the rendition of legal services or advice for which the attorney-client privilege applies.  The Court sustains OSU's second objection (special master erred in finding that none of the claimed exceptions to the Public Records Act applied), third objection (special master erred in finding that the common law attorney-client privilege did not apply), and eighth objection (special master erred in finding that no portion of the responsive documents contained privilege or protected information).

**{¶23}** Since a decision on the two remaining objections—(first objection—special master erred in finding responsive documents were public records by either direct agency or quasi agency) and (seventh objection—special master erred in finding Prof.Cond.R. 1.6 did not apply)—will not alter the final outcome, those objections fall within the realm of the academic. *See City of Grove City v. Clark*, 10th Dist. Franklin No. 01AP-1369, 2002-Ohio-4549, ¶ 11 (actions or opinions are moot when they have become fictitious, colorable, hypothetical, academic or dead).  Nonetheless, with respect to OSU's seventh objection, the Court finds that the Special Master correctly applied the law and, as a consequence, OSU's seventh objection should be overruled.  The Court recognizes the authority of the Board of Professional Conduct of the Supreme Court to offer additional guidance as to the application of Prof.Cond.R. 1.6 in similar circumstances.[7]

---

[7]    *See* Gov.Bar. R. V, Section 2(D) (providing that the Board of Professional Conduct of the Supreme Court "may issue nonbinding advisory opinions in response to prospective or hypothetical questions directed to the Board regarding the application of the Supreme Court Rules for the Government of the Bar

**{¶24}** The Ohio Supreme Court has stated:

It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies.

*Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970).  The doctrine of judicial restraint therefore dictates that a determination of OSU's first objection is best left for another day.  *See PDK Laboratories, Inc. v. United States Drug Enforcement Administration* (D.C.Cir.2004), 362 F.3d 786, 799, 360 U.S. App. D.C. 344 (Roberts, J., concurring in part and concurring in judgment) (expressing "the cardinal principle of judicial restraint," *i.e.*, "if it is not necessary to decide more, it is necessary not to decide more").  *See also State ex rel. Luken v. Corp. for Findlay Mkt. of Cincinnati*, 135 Ohio St.3d 416, 2013-Ohio-1532, 988 N.E.2d 546, ¶ 25; *Meyer v. UPS*, 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, ¶ 53.

### III.    Conclusion

**{¶25}** The Court OVERRULES Respondent's request to grant its motion to dismiss.  The Court OVERRULES Respondent's fourth, fifth, sixth, and seventh objections to the Special Master's Report and Recommendation. The Court, however, SUSTAINS Respondent's second, third, and eighth objections to the Special Master's Report and Recommendation.  Respondent's first Objection is moot.  The Report and Recommendation of the Special Master is therefore ADOPTED in part and NOT ADOPTED in part.  If Respondent has not already provided the final, approved version of the requests made by Requester in his Complaint as noted in this Decision and Entry, it

---

of Ohio, the Supreme Court Rules for the Government of the Judiciary of Ohio, the Ohio Rules of Professional Conduct, the Code of Judicial Conduct, or the Attorney's Oath of Office").

is hereby ORDERED to do so.  Court costs shall be equally divided between the parties. The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the Journal.

_____
PATRICK E. SHEERAN
Judge

**Filed July 28, 2022**
**Sent to S.C. Reporter 8/4/22**